Filed 9/13/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D070732 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE354485) |
| MEGAN DONNA SANDEE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Lantz Lewis, Judge.  Affirmed.

Benjamin P. Lechman, Siri Shetty, and Michelle Rogers, under appointments by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Collette C. Cavalier, Teresa Torreblanca and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

After the trial court denied a motion to suppress evidence, Megan Donna Sandee pled guilty to possession for sale of a controlled substance (Health & Saf. Code, § 11378) and unauthorized possession of a controlled substance (*id*., § 11377, subd. (a)). The trial court granted felony probation to the court for a period of three years.

Sandee challenges the trial court's denial of her motion to suppress the evidence obtained from the search of her cell phone.[1] According to Sandee, although she was on probation at the time of the search and subject to a general search condition which allowed authorities to search her "property" and "personal effects" without a warrant, the scope of that search condition did not extend to a warrantless search of her cell phone. We conclude that the motion to suppress was properly denied, as a reasonable, objective person at the time of the search would understand a search of Sandee's cell phone to fall within the scope of the search conditions in her probation orders. Accordingly, we affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

On September 23, 2015, San Diego County Sheriff's Department detectives were conducting surveillance on a house suspected of being a location for narcotics activity. Sandee and a male companion arrived at the house on bicycles, entered the house for a

---

[1] Even though Sandee did not obtain a certificate of probable cause from the trial court, this appeal is proper as an appeal following a guilty plea challenging the denial of a motion to suppress evidence for which an appeal is provided under Penal Code section 1538.5, subdivision (m). (*People v. Shelton* (2006) 37 Cal.4th 759, 766; Cal. Rules of Court, rule 8.304(b)(4)(A).)

period of time and then rode away. A detective on the surveillance team observed that Sandee and her companion failed to stop at a red light on their bicycles after leaving the house, and he conducted a traffic stop in his sheriff's vehicle by activating his lights and yelling at them to stop. Sandee stopped her bicycle next to a large bush. In response to the detective's question, Sandee stated that she was on probation and subject to a search condition. By contacting dispatch, the detective confirmed that Sandee had a "valid [F]ourth [Amendment] waiver, good in all four areas," meaning that the waiver covered property in Sandee's residence, vehicle, person and place of work.[2] Relying on the waiver, the detective searched Sandee's backpack and found a hypodermic needle. He also conducted a search of Sandee's cell phone and found several text messages which he believed were indications that Sandee was involved in selling narcotics. The detective took photos of the text messages and noted them in his report. Near the area where Sandee had stopped her bicycle, the detective found a bag containing 6.9 grams of methamphetamine lying next to the bush.

Sandee was arrested, and a complaint was filed alleging three counts: transportation for sale of methamphetamine (Health & Saf. Code, § 11379, subd. (a));

---

[2]     At the time of the search, Sandee was on probation in several misdemeanor cases in which she agreed to allow searches of her person and property as a condition of probation. Specifically, the probation conditions stated that Sandee shall "[s]ubmit person, vehicle, place of residence, property, personal effects to search at any time with or without a warrant, and with or without reasonable cause." The probation orders were made in August 2013, September 2013 and April 2015.

possession for sale of a controlled substance (*id.*, § 11378) and unauthorized possession of a controlled substance (*id*., § 11377, subd. (a)).

Sandee filed a motion to suppress the evidence found on her cell phone. On April 29, 2016, after holding an evidentiary hearing with testimony from the detectives involved in Sandee's arrest, the trial court denied the motion to suppress. Specifically, the trial court concluded that the detective's search through Sandee's phone for text messages was within the scope of the Fourth Amendment waiver agreed to by Sandee as a condition of probation.[3]

Sandee entered a guilty plea to possession for sale of a controlled substance (Health & Saf. Code, § 11378) and unauthorized possession of a controlled substance (*id*., § 11377, subd. (a)). The People dismissed the remaining count. The trial court suspended imposition of sentence for a period of three years and granted felony probation to the court.

---

[3]     Because the detective conducted only a cursory search of the contents of the cell phone, limited to text messages, this case does not present the issue of whether a probation search condition permits law enforcement to use a cell phone to access other type of data that may raise third-party privacy concerns, such as using the cell phone connection to access a shared database or social networking site with restricted access. (See, e.g., *In re Malik J.* (2015) 240 Cal.App.4th 896, 903 ["Remotely stored information may also implicate the privacy interests of third parties who are not otherwise subject to search or court supervision. This remains true even if the information is posted to a social networking Web site or a large group of people. . . . Although a user's personal profile is potentially viewable by anyone, the Web sites have privacy features that allow users to set limits on who may access their information and what information may be shared generally. Some Web sites default their settings to allow broad public access, while others default to more private access."].)

DISCUSSION

Sandee's sole argument on appeal is that the trial court erred in denying the motion to suppress the evidence found on her cell phone.

A.      *Applicable Legal Standards for Motions to Suppress Evidence*

A defendant may move to suppress evidence on the ground that "[t]he search or seizure without a warrant was unreasonable."  (Pen. Code, § 1538.5, subd. (a)(1)(A).) "When a defendant raises a challenge to the legality of a warrantless search or seizure, the People are obligated to produce proof sufficient to show, by a preponderance of the evidence, that the search fell within one of the recognized exceptions to the warrant requirement.  [Citations.]  A probation search is one of those exceptions.  [Citations.] This is because a 'probationer . . . consents to the waiver of his Fourth Amendment rights in exchange for the opportunity to avoid service of a state prison term,' except insofar as a search might be 'undertaken for harassment or . . . for arbitrary or capricious reasons.' (*People v. Bravo* (1987) 43 Cal.3d 600, 608, 610 . . . ; accord, *People v. Medina* (2007) 158 Cal.App.4th 1571, 1577.)"  (*People v. Romeo* (2015) 240 Cal.App.4th 931, 939.)  "A search conducted pursuant to a valid consent does not violate the Fourth Amendment unless the search exceeds the scope of the consent." (*People v. Bravo*, *supra*, 43 Cal.3d at p. 605 (*Bravo*).)

" ' "The standard of appellate review of a trial court's ruling on a motion to suppress is well established.  We defer to the trial court's factual findings, express or implied, where supported by substantial evidence.  In determining whether, on the facts

so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." ' "  (*People v. Suff* (2014) 58 Cal.4th 1013, 1053.)  "Under California law, issues relating to the suppression of evidence derived from police searches and seizures must be reviewed under federal constitutional standards."  (*People v. Robles* (2000) 23 Cal.4th 789, 794.)

Following the United States Supreme Court's opinion in *Riley v. California* (2014) 573 U.S. __ [189 L.Ed.2d 430, 134 S.Ct. 2473], it is firmly established that a law enforcement officer may not conduct a search of a person's cell phone without a warrant, even incident to arrest, unless an applicable exception to the warrant requirement applies. As *Riley* observed, "[c]ell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person."  (*Riley*, *supra*, 573 U.S. at p. __ [189 L.Ed.2d at p. 435].)  *Riley* explained that "[m]odern cell phones are not just another technological convenience.  With all they contain and all they may reveal, they hold for many Americans 'the privacies of life,' [citation].  The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought."  (*Riley*, *supra*, 573 U.S. at p. __ [189 L.Ed.2d at p. 452].)

B.      *The Search of Sandee's Cell Phone Was Within the Scope of the Search Conditions in Her Probation Orders*

As we have explained, as a condition of probation in several misdemeanor cases Sandee agreed to "[s]ubmit person, vehicle, place of residence, property, personal effects to search at any time with or without a warrant, and with or without reasonable cause,"

6

and the detective in this case relied on that probation search condition to conduct the warrantless search of Sandee's cell phone. Accordingly, the question presented here is whether the warrantless search of Sandee's cell phone was permitted under the probation search exception to the warrant requirement in that the search fell within the scope of the Fourth Amendment waivers in Sandee's probation orders.

As our Supreme Court explained in *Bravo*, *supra*, 43 Cal.3d 600, when interpreting the scope of a Fourth Amendment waiver agreed to by the defendant as a condition of probation, the "waiver of [the defendant's] Fourth Amendment rights must be interpreted on the basis of an objective test." (*Bravo*, at p. 606.) Under this approach, "[t]he search condition must . . . be interpreted on the basis of what a reasonable person would understand from the language of the condition itself, not on the basis of appellant's subjective understanding, or under a strict test in which a presumption against waiver is applied." (*Id*. at p. 607.) The reason for this rule is that "[l]aw enforcement officers who rely on search conditions in probation orders, the probationer himself [or herself], and other judges who may be called upon to determine the lawfulness of a search, must be able to determine the scope of the condition by reference to the probation order. We cannot expect police officers and probation agents who undertake searches pursuant to a search condition of a probation agreement to do more than give the condition the meaning that would appear to a reasonable, objective reader. They can neither inquire into the subjective understanding of the probationer, nor analyze the condition in light of legal precedent drawing fine points based on minor differences in the wording of search conditions in other probation orders." (*Id*. at pp. 606-607.)

7

For the purpose of our analysis, it is important to determine the appropriate timeframe for determining the reasonable meaning of the search condition in Sandee's probation orders. We conclude that the proper inquiry focuses on what a reasonable, objective person would understand the search condition to mean *at the time of the search*. We reach this conclusion based on our Supreme Court's focus in *Bravo*, *supra*, 43 Cal.3d 600, on the limitations of law enforcement officers who conduct the search. *Bravo* explained that an objective test is appropriate because officers "can neither inquire into the subjective understanding of the probationer, nor analyze the condition in light of legal precedent drawing fine points based on minor differences in the wording of search conditions in other probation orders." (*Id.* at pp. 606-607.) If law enforcement officers cannot be expected to draw fine points based on legal precedent when interpreting the search condition's reasonable meaning, those officers certainly cannot be expected to possess an understanding based on *future* legal developments.[4]

Turning to the language of the probation search condition, we conclude that at the time the search was conducted a reasonable, objective person would understand it to encompass a search of Sandee's cell phone. In the probation search condition, Sandee

---

[4]    Consistent with the approach of focusing on law enforcement officers' reasonable understanding of scope of the search condition at the time of the search, the United States Supreme Court has developed a good faith exception to the exclusionary rule, under which a law enforcement search conducted in reliance on binding legal precedent at the time, does not become impermissible because applicable legal standards changed *afterwards*. (*Davis v. United States* (2011) 564 U.S. 229, 232 (*Davis*) ["searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule"].)

agreed to submit her "property" and "personal effects" to search at any time. The probation search condition is worded very broadly and contains no language whatsoever that would limit the terms "property" and "personal effects" to exclude Sandee's cell phone or other electronic devices and the data stored on them. As a cell phone is indisputably the property of the person who possesses it and constitutes part of his or her personal effects, a reasonable person would understand the terms "property" and "personal effects" to include Sandee's cell phone and the data on it.[5]

C.     United States v. Lara *Is Not Persuasive Authority*

To support her contention that the scope of the probation search condition did not extend to a search of her cell phone, Sandee relies on a recent opinion from the United States Court of Appeals for the Ninth Circuit. Specifically, in *United States v. Lara* (9th Cir. 2016) 815 F.3d 605 (*Lara*), the Ninth Circuit concluded that the federal district court should have granted a motion to suppress evidence obtained from a search of the defendant's cell phone pursuant to a probation search condition that allowed warrantless searches of the defendant's " 'person and property, including any residence, premises, container or vehicle under [his] control.' " (*Id.* at p. 610.) In conducting its analysis, the Ninth Circuit did not follow the approach normally employed by the California Supreme Court in assessing the validity of a search conducted pursuant to a probation search

---

[5]     Although *Riley* observed that "[c]ell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person . . ." (*Riley*, *supra*, 573 U.S. ___, 189 L.Ed.2d at p. 435), making it inappropriate to include them in the search incident to arrest exception to the warrant requirement, nothing in *Riley* suggests that cell phones should *not* be understood as a *type* of personal property.

9

condition, under which the probationer is understood to have consented to all searches within the scope of the probation search condition, as interpreted on an objective basis. (*Bravo*, *supra*, 43 Cal.3d at p. 610.) Instead, *Lara* applied the balancing approach employed by the United States Supreme Court in *U.S. v. Knights* (2001) 534 U.S. 112 (*Knights*), under which the validity under the Fourth Amendment of a search conducted pursuant to a probation search condition is determined under a balancing approach to determine whether the search was reasonable under the totality of the circumstances.[6]

---

6    In *Knights*, the Supreme Court expressly acknowledged that the California Supreme Court uses a different approach for assessing the constitutional validity of a search conducted pursuant to a probation search condition, under which the court analyzes whether the probationer consented to the search by accepting the specific probation search condition at issue. (*Knights*, *supra*, 534 U.S. at p. 118, citing *People v. Woods* (1999) 21 Cal.4th 668.) As set forth in *Woods*, "[i]n California, probationers may validly consent in advance to warrantless searches in exchange for the opportunity to avoid service of a state prison term. [Citations.] For nearly three decades, this court has upheld the legality of searches authorized by probation terms that require probationers to submit to searches of their residences at any time of the day or night by any law enforcement officer with or without a warrant." (*Woods*, at pp. 674-675, fn. omitted.) Relying on *Bravo*, *supra*, 43 Cal.3d 600, *Woods* explained that "[i]n all cases, a search pursuant to a probation search clause may not exceed the scope of the particular clause relied upon. [Citation.] Nor may such a search be undertaken in a harassing or unreasonable manner." (*Woods*, at p. 682.)

   *Knights* also expressly stated that it was not deciding the validity of the California Supreme Court's consent-based approach because it found the search to be valid under the alternative balancing approach. (*Knights*, *supra*, 534 U.S. at p. 118 ["We need not decide whether Knights' acceptance of the search condition constituted consent in the . . . sense of a complete waiver of his Fourth Amendment rights, however, because we conclude that the search of Knights was reasonable under our general Fourth Amendment approach of 'examining the totality of the circumstances,' [citation], with the probation search condition being a salient circumstance."].) Accordingly, after *Knights*, the California Supreme Court's consent-based approach to assessing the validity of a search performed under a probation search condition remains the controlling law in California and has not been abrogated by controlling United States Supreme Court authority.

This balancing approach consists of " 'assessing, on the one hand, the degree to which [the search] intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.' " (*Knights*, at p. 119.)

In conducting its balancing analysis, *Lara* observed that the probation search condition at issue was not clear as to whether it encompassed cell phones, and therefore the probationer may still have had a reasonable expectation of privacy in the contents of his cell phone despite his agreement to warrantless searches of his property. *Lara* explained the defendant had "agreed to 'submit [his] person and property, including any residence, premises, container or vehicle under [his] control to search and seizure,' " but "[n]one of these terms—in particular, neither 'container' nor 'property'—clearly or unambiguously encompasses his cell phone and the information contained therein." (*Lara*, *supra*, 815 F.3d at p. 610.) *Lara* also observed that the types of objects named in the probation condition (i.e., " 'residence, premises, container or vehicle' ") were "physical objects that can be possessed," whereas cell phone data was "not property in this sense." (*Id.* at p. 611.) In light of the lack of clarity in the probation search condition and the privacy interests implicated by cell phone data as described in *Riley*, *supra*, 573 U.S. ___ [189 L.Ed.2d 430], the Ninth Circuit concluded that the defendant had an expectation of privacy in the contents of his cell phone. (*Lara*, at pp. 611-612.) Balancing this expectation against the government's interest in supervising the defendant on probation, *Lara* concluded that the search was not reasonable under the totality of the circumstances, and therefore the evidence obtained from a search of the defendant's cell phone should have been suppressed. (*Id.* at p. 612.)

11

We are not bound by Ninth Circuit precedent (*Forsyth v. Jones* (1997) 57 Cal.App.4th 776, 782-783), and we do not find *Lara*'s analysis to be persuasive because it does not follow the approach approved by the California Supreme Court for assessing the constitutional validity of a search conducted pursuant to a probation search condition. Unless the United States Supreme Court provides direct authority disapproving the California Supreme Court's approach in *Bravo*, *supra*, 43 Cal.3d 600, we are bound by the law set forth in that case. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Under this state's body of law, as set forth in *Bravo*, a search pursuant to a probation search condition is not prohibited by the Fourth Amendment as long as (1) it is not "undertaken for harassment or . . . for arbitrary or capricious reasons" (*Bravo*, at p. 610); and (2) it is within the scope of the search condition, interpreted "on the basis of an objective test" according to "what a reasonable person would understand from the language of the condition itself." (*Id*. at pp. 606-607.) As we have explained, a reasonable person at the time the search was conducted would understand the terms "property" and "personal effects" to include Sandee's cell phone and the data that it contained. Further, Sandee does not contend that the search was arbitrary or capricious or conducted in order to harass her. Therefore, the search was constitutionally valid under governing California authority.

D.      *The Electronic Communications Privacy Act Does Not Support Sandee's Argument*

Sandee also relies on California's recently enacted Electronic Communications Privacy Act (Pen. Code, § 1546 et seq.) (ECPA) to argue that the probation search

12

condition did not provide consent for law enforcement to search her cell phone. The ECPA went into effect on January 1, 2016, after the search of Sandee's cell phone in September 2015. (Stats. 2015, ch. 651, § 1.) Among other things, the ECPA states that a government entity shall not "[a]ccess electronic device information by means of physical interaction or electronic communication with the electronic device" unless one of several statutory exceptions applies, including obtaining the specific consent of the authorized possessor of the device. (Pen. Code, § 1546.1, subds. (a)(3), (c)(3).) As applicable here, an additional specific exception was added to the ECPA, effective January 1, 2017, which states that a government entity may physically access electronic device information "[e]xcept where prohibited by state or federal law, if the device is seized from an authorized possessor of the device who is subject to an electronic device search as a clear and unambiguous condition of probation, mandatory supervision, or pretrial release." (*Id.*, § 1546.1, subd. (c)(10); Stats. 2016, ch. 541, § 3.5.)

Sandee contends that the ECPA makes it illegal for the detective to have accessed the data on her cell phone without her consent and in the absence of a clear and unambiguous probation search condition referring to the search of electronic devices. Although the ECPA did not go into effect until after the search at issue in this case, Sandee contends that ECPA is nevertheless applicable here in interpreting the scope of Sandee's probation search condition. Specifically, Sandee points out that the ECPA was in effect at the time of the suppression hearing in April 2016, and she argues that the trial court accordingly should have applied it in assessing the legality of the search. We disagree.

As we have explained, the proper inquiry under *Bravo*, *supra*, 43 Cal.3d 600, is whether *at the time of the search* a reasonable, objective person would have understood the search of Sandee's cell phone to fall within the scope of the warrantless search conditions in Sandee's probation orders. (*Id.* at pp. 606-607.) As the ECPA was not in effect at the time of the search, a reasonable, objective person at the time of the search would not have understood the ECPA to restrict the scope of the search permitted by the probation orders. As the proper inquiry focuses on a reasonable person's understanding at the time of the search, not at the time of the suppression hearing, it is not relevant that the ECPA was in effect at the time of the suppression hearing.[7] Although it may be reasonable, *after* the ECPA became effective, for a law enforcement officer conducting a search to interpret a general probation search condition authorizing a warrantless search of the probationer's property as excluding searches of the probationer's electronic device information, such as cell phone data, we see no basis for a reasonable person to have reached that conclusion *prior* to the ECPA.

---

[7] Sandee also supports her argument by relying on *In re Estrada* (1965) 63 Cal.2d 740, in which our Supreme Court held that when a criminal statute is amended to lessen punishment for a crime, the newly enacted law is to be applied retroactively to criminal prosecutions not yet final on appeal. (*Id*. at p. 745; see also *People v. Brown* (2012) 54 Cal.4th 314, 325.) The retroactivity principle discussed in *Estrada* is not applicable here because the ECPA does not have the effect of lessening the punishment for a crime. Citing *People v. Babylon* (1985) 39 Cal.3d 719, 722, and *People v. Wright* (2006) 40 Cal.4th 81, 91, Sandee also contends that the principal set forth in *Estrada* applies when a statute decriminalizes conduct altogether or defenses have been expanded. Assuming without deciding that Sandee accurately characterizes those authorities, they are not applicable here as the enactment of the ECPA does not fall into either category.

14

E.    *Sandee's Reliance on* In re I.V. *Is Not Persuasive*

Finally, Sandee contends that the recent opinion in *In re I.V.* (2017) 11 Cal.App.5th 249 (*I.V.*) supports her argument that the scope of the search conditions in her probation orders did not extend to a search of her cell phone data.

*I.V.* addressed a challenge to a probation order imposed in a juvenile delinquency proceeding in June 2016, requiring that the minor submit his " 'property' " and " 'any property under [his] immediate control' " to search at any time. (*I.V.*, *supra*, 11 Cal.App.5th at p. 254.) The minor challenged the probation condition on the ground, among others, that it was unconstitutionally vague "as to whether it encompasses electronic devices and data." (*Id*. at p. 261.) *I.V.* rejected the vagueness challenge, concluding that "[r]easonably construed, the search condition applies only to tangible physical property, and not to electronic data." (*Id*. at p. 262.) In the course of its discussion, *I.V.* noted that its conclusion was "consistent with California's recently enacted [ECPA], which limits government entities' access to 'electronic device information.' " (*Id*. at p. 262, fn. 16.)

In light of the fact that *I.V.* considered the scope of a search condition imposed after the ECPA became effective in January 2016, although *I.V.* used broad language in describing its holding, we do not find its analysis regarding the scope of the probation search condition to be applicable in this case, in which the search at issue took place before the ECPA. As we have noted, while it is reasonable *after* the ECPA to interpret a general search condition in a probation order to exclude a search of the probationer's

15

electronic data unless the search condition specifically states otherwise, a reasonable, objective person would not reach such a conclusion *prior* to the ECPA.

In sum, we conclude that at the time the detective searched Sandee's cell phone in September 2015, a reasonable, objective person would interpret the search condition in Sandee's probation orders, allowing a search of Sandee's "property" and "personal effects" to encompass a search of her cell phone to review the text messages contained therein. Accordingly, the trial court properly denied Sandee's motion to suppress the evidence discovered as a result of the search of her cell phone.[8]

DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.

---

[8]    In light of our conclusion, we need not and do not consider the People's argument that the search was permissible under the good faith exception to the exclusionary rule. (*Davis*, *supra*, 564 U.S. at p. 232.)

16